Nelson Cole et al., Respondents, v. Edward Butler, Appellant.

St. Louis Court of Appeals, January 4, 1887.

1. Partnership—Estoppel.— One who is not a co-partner is not estopped to deny that his name was so used as to lead others to suppose that he was a co-partner, unless it be shown that such use of his name was made with his consent or knowledge.

2. Negligence.—The rule that, where one of two innocent persons must suffer, the loss must fall on him whose negligence contributed to cause it, should never be applied unless the negligence is clearly established.

Appeal from the St. Louis Circuit Court, Daniel Dillon, Judge.

*Reversed and remanded.*

D. Castleman Webb, for the appellant.

A. R. Taylor, for the respondents.

Thompson, J., delivered the opinion of the court.

This action was brought before a justice of the peace against Edward Butler, Joseph H. McEntire, William H. Smith, and the Standard Theatre Company, a corporation, to recover the sum of $34.24, alleged to be due by account for certain materials furnished by the plaintiffs to the defendants. The justice found in favor

of the Standard Theatre Company, and against the other three defendants. The defendant, Edward Butler, alone appealed to the circuit court. In the circuit court there was a trial before a jury and a verdict and judgment in favor of the plaintiff and against this defendant. He prosecutes an appeal to this court.

The evidence showed that the materials in question were delivered by the plaintiffs at the Standard Theatre upon three written orders signed "Butler, McEntire & Smith;" that one of these orders was drawn upon a letter-head used by the Standard Theatre Company which exhibited the names of Ed. Butler, Jos. H. McEntire, and W. H. Smith, as proprietors; that all of these orders were in the hand-writing of J. J. Butler, and that the goods were sent to Butler, McEntire & Smith, and were receipted for upon the dray tickets at the Standard Theatre by persons there employed. The plaintiffs also gave evidence to the effect that, for several years they had been in the habit of furnishing to the Standard Theatre Company materials to be used in and about its theatre, and that the Standard Theatre Company during this time had been in the habit of using letter-heads upon which was printed the following legend: "Ed. Butler. Jos. H. McEntire, and W. H. Smith, Proprietors Standard Theatre. W. H. Smith, Manager." They also gave evidence tending to show that the three orders for the goods sued for were the only orders which the plaintiffs had ever received which were signed "Butler, McEntire & Smith," and that the orders which they usually received were signed by the Standard Theatre Company, either by its secretary, or by W. H. Smith, its manager. The evidence showed that J. J. Butler, who drew the orders in controversy, was secretary of the Standard Theatre Company, and that the defendant, Edward Butler, was its president. All the goods which the Standard Theatre Company had so ordered had been paid for. One of the plaintiffs also testified that he never knew any person by the name of

Butler, who had anything to do with the theatre, except the defendant, Ed. Butler; that he gave credit in filling the order sued for, to the "Butler, McEntire & Smith," of whom the defendant, Ed. Butler, was a member; and that he had never heard of J. J. Butler being a member of Butler, McEntire & Smith. In former transactions with the theatre the orders had come to the plaintiffs in the name of the theatre by its secretary or manager, and the plaintiffs had charged them to the Standard Theatre; but that they had charged these goods to Butler, McEntire & Smith. The witness said that he had given the credit to Butler, McEntire & Smith, and also to the Standard Theatre Company, supposing that the Standard Theatre Company, and Butler, McEntire & Smith were the same, and that the goods were obtained for the theatre in the same manner that other goods had formerly been obtained for the theatre. For the defendant, it was shown that Edward Butler had never been a member of the firm of Butler, McEntire & Smith; that the Standard Theatre Company was a corporation; that Butler, McEntire & Smith was a partnership organized for the purpose of running a traveling Humpty Dumpty show; that the goods in controversy had been ordered by them for this show, and not for the Standard Theatre Company; that they had no connection with the Standard Theatre, except that they were permitted to use the theatre for the purpose of exhibiting their performances under a business arrangement. Edward Butler also testified that he had never noticed that the letter-head of the Standard Theatre had the names of Edward Butler, Jos. H. McEntire, and W. H. Smith printed upon it; that the advertising agent had full control of that matter, and that the witness never asked him about it.

For the plaintiff the court instructed the jury: "That if they believed from the evidence that Edward Butler, Jos. H. McEntire, and William H. Smith were, with the knowledge of the defendant, advertised as the

proprietors of the Standard Theatre Company ; and if the jury believe from the evidence, that, by a course of dealing between plaintiffs and said theatre and the proprietors thereof, the plaintiffs were led to believe that J. J. Butler had the authority to sign the names attached to the orders read in evidence as the signatures of the said proprietors of said theatre, then the plaintiffs are entitled to recover, provided that they delivered said materials upon the credit of said proprietors, and provided further, that the jury believe from the evidence, and from the course of dealing between the plaintiffs and said theatre, and the proprietors thereof, and before the giving of the orders given in evidence, a reasonably prudent man would have believed that J. J. Butler had the authority to sign the names attached to the orders as the signatures of the proprietors of the said theatre.''

It will be perceived that the question for decision is a very close one, and, if a greater amount had been involved in the controversy, we might have expected more aid from the learned counsel employed in the case than we have received.

There is a principle that if a person allows himself to be held out to the public as a member of a partnership firm, and credit is extended to the firm on the strength of his being a member, he will not be permitted to deny that relation. But that principle can not be invoked to support the plaintiff's case here, because there is no evidence that the defendant, Edward Butler, was ever held out to the plaintiffs, or to the public, in any other character than as one of the proprietors of the Standard Theatre. Now it is shown that the Standard Theatre is owned by a corporation, and that Butler, Mc-Entire and Smith are merely shareholders in the corporation. This fact, if known to the plaintiffs, would have exempted Edward Butler from personal liability for this bill, even if the goods had been furnished to the Standard Theatre. Now, the plaintiffs do not claim that

they did not know that the Standard Theatre Company was a corporation, and it is wholly probable that they did know it. They had a course of dealing with it for three years, furnishing goods upon written orders which were always signed "Standard Theatre Company," by its secretary or manager. A secretary and a manager are officers appropriate to a corporation, but not usual to a partnership. Indeed, the most ordinary business diligence would have required the plaintiffs to know whether the concern to which they were thus furnishing goods on credit, was a partnership or a corporation, and a jury would be entitled to presume, from the relations between them, that they knew that it was a corporation. If they knew this, the fact that the names of Edward Butler, Jos. H. McEntire, and W. H. Smith were printed on its letter-heads as proprietors would mean nothing so far as the plaintiffs were concerned ; it would not imply an agreement on the part of those three gentlemen to guarantee the debts of the corporation.

But it is perceived that the carefully drawn instruction above quoted, does not place the liability of the defendant, Edward Butler, upon that rule of estoppel which makes a person liable for partnership debts who suffers himself to be held out as a member of the firm, although he is not so in fact. It rather attempts to apply another principle of the law which is applied very guardedly, namely, that where one of the two parties must suffer a loss through the neglect of a third party, the loss should rather fall upon that party whose negligence enabled the third party to commit the wrong. We do not understand that it is contended on behalf of the defendant that the above instruction is erroneous in point of law, and we see no ground for such a contention. If the defendant, Edward Butler, allowed such a use to be made of his name as would have led the plaintiffs, exercising reasonable business prudence, to believe that J. J. Butler had authority to sign his name to such orders as those upon which the goods in controversy were fur-

nished, then we do not doubt that the plaintiffs would be entitled to recover against him in this action. But there is no evidence in the record that he ever allowed J. J. Butler to sign the name of Butler, McEntire & Smith to any order for goods which were bought from the plaintiffs for the Standard Theatre, or for any one else; nor is there any evidence that J. J. Butler ever sent to the plaintiffs an order for the goods signed Butler, McEntire & Smith, until the orders in question. Our opinion, therefore, is, that the above instruction was not warranted by any evidence in the case, and that the learned judge erred in submitting the case to the jury.

It must be borne in mind that, in order to charge a person with the debt of another, on the principle of estoppel, that person must do something, affirmatively or negatively, by which he holds himself out in a certain relation, or allows himself to be held out in a certain relation, so that it would work a fraud upon the plaintiff for him to deny that he occupied such a relation. In order to charge the defendant, Edward Butler, upon this principle, the plaintiffs would have to make it appear that he had authorized J. J. Butler to sign his name to orders given to the plaintiffs, similar to those in evidence; or else that J. J. Butler had done this under circumstances in which knowledge of the act would be imputed to Edward Butler. But there is no evidence to this effect in the record at all. Whatever wrong has been done to the plaintiffs, by which they were induced to believe that the goods were purchased for the Butler, McEntire & Smith, of which Edward Butler was one, has been committed by J. J. Butler, and not by Edward Butler. J. J. Butler, and the two others who were corporators in the Standard Theatre Company, and who were advertised with Edward Butler as its proprietors, concluded to form a partnership wholly distinct from the Standard Theatre Company, for the purpose of running a traveling Humpty Dumpty show, and to call it

by the name of Butler, McEntire & Smith. This con-cern ordered the goods of the plaintiffs, and if the orders were sent to the plaintiffs by J. J. Butler, with-out any explanation that it was a different concern from the Standard Theatre Company, it may have been, under the circumstances, a fraud on the plaintiffs; but this is no reason why Edward Butler, who was guilty of no fraud or negligence contributing to the mistake which the plaintiffs made, should pay the debt.

The judgment will be reversed and the cause re-manded. All the judges concur.